IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DEBRAH LUMPKINS and )
STEVE LUMPKINS, )
 )
         **Plaintiffs,** )
 )
vs. ) Case No. 11-CV-12-TCK-FHM
 )
BALBOA INSURANCE COMPANY, and )
MERITPLAN INSURANCE COMPANY, )
 )
         **Defendants.** )

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. 6).[1]

**I.    Factual Background**

In their Complaint filed January 5, 2011, Plaintiffs Debrah and Steve Lumpkins allege that they entered into a "Homeowners' Insurance Policy" on property located at 9250 S. 42585, Inola, Oklahoma ("Property") with Defendants Meritplan Insurance Company ("Meritplan") and Balboa Insurance Company ("Balboa") (collectively "Defendants").[2] Plaintiffs allege that they sought benefits from Defendants after they sustained a loss to their home resulting from a water leak that flooded significant portions of the Property. Defendants allegedly (1) retained an untrained and inexperienced independent adjuster to adjust Plaintiffs' claim; (2) delayed in paying $7,765.70 that Plaintiffs expended for emergency services; and (3) failed to pay $19,195.58 for restoration costs

---

[1] On September 12, 2011, Magistrate Judge Frank McCarthy entered a Report and Recommendation ("Report") on the motion to dismiss, which reaches the same outcome as this Opinion and Order. The referral of the motion, however, was due to a docketing error. The Report (Doc. 23) is therefore DENIED as moot, and this Opinion and Order will serve as the Order of the Court.

[2] Plaintiffs seek to hold Balboa liable as the parent company of Meritplan.

incurred by Plaintiffs. Plaintiffs assert causes of action against both Defendants for breach of contract and breach of the duty of good faith and fair dealing.

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), arguing that Plaintiffs failed to state a claim because Plaintiffs are not named insureds or third-party beneficiaries of the relevant insurance policy. Defendants attached to their motion a policy entitled Risk Based Protection Policy, Policy Number 6043-0002 ("Policy"), which was issued March 5, 2009. The Policy was issued by Meritplan and names "GMAC Mortgage, LLC" as the insured. (Ex. 1 to Defs.' Mot. to Dismiss.) Defendants also attached two notices dated October 13, 2009, which provide notice to Plaintiff Debrah Lumpkins of the Policy between Meritplan and GMAC Mortgage, LLC ("GMAC"). (Ex. 2 to Defs.' Mot. to Dismiss.) One notice, entitled "Notice of Placement," is on GMAC letterhead, is from GMAC to its mortgagor Debrah Lumpkins, and informs her that it has obtained "lender-placed insurance coverage" with Meritplan. (*See id.* at 2-3.)[3] The other notice, entitled "Notice of Lender-Placed Insurance," is on Meritplan letterhead, references the Policy number, describes a coverage period of October 8, 2009 until October 8, 2010, and informs Plaintiff Debrah Lumpkins that GMAC has purchased insurance on the Property. (*See id.* at 4.)

In their response to the motion to dismiss, Plaintiffs admit that their breach of contract and bad faith claims arise from the Policy between Meritplan and GMAC. Plaintiffs argue that they are nonetheless entitled to assert breach of contract and bad faith claims against Defendants based on Plaintiffs' status as third-party beneficiaries of the Policy between Meritplan and GMAC. Plaintiffs

---

[3] All references to exhibit page numbers are to the CM/ECF numbering at the top of the document.

attached numerous pieces of extrinsic evidence and urged the Court to consider same. (*See* Exs. A-G to Pls.' Resp. to Defs.' Mot. to Dismiss.)

For reasons explained below, the Court may consider only the four corners of the insurance Policy, and any documents incorporated therein, in deciding the questions presented. Therefore, the Court will consider only (1) the Policy, and (2) the Notice of Lender-Placed Insurance, which is at page 4 of exhibit 2 to Defendants' motion to dismiss.[4] Consideration of these two documents does not require conversion of Defendants' motion to dismiss to one for summary judgment. *See Geras v. Int'l Bus. Machines Corp.*, 638 F.3d 1311, 1314-15 (10th Cir. 2011) ("We are not persuaded the district court abused its discretion when it considered evidence that was referenced in and central to the complaint while excluding materials outside the pleadings. The court was not required to accept [the plaintiff's] evidence and convert [the defendant's] motion into a motion for summary judgment simply because the court considered the relevant document setting forth the commission plan alleged in [the plaintiff's] complaint."); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss."). Therefore, the Rule 12(b)(6) standard governs the Court's analysis.

## II.     Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint

---

[4] As explained in detail below, this notice is clearly incorporated by reference into the Policy for the relevant coverage period. The other notice comprising Exhibit 2 is on GMAC letterhead, and it is not clear that such document is incorporated by reference into the Policy.

contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

## III. Analysis

A third-party beneficiary of an insurance policy may sue for breach of contract. *See* Okla. Stat. tit. 15, § 29 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."); *Shebester v. Triple Crown Insurers*, 974 F.2d 135, 138 (10th Cir. 1992) (applying Okla. Stat. tit. 15, § 29 in context of alleged third-party beneficiary to an insurance policy). A third-party beneficiary of an insurance contract may also sue for breach of the duty of good faith and fair dealing inherent in insurance contracts. *See Roach v. Atlas Life Ins. Co.*, 769 P.2d 158 (Okla. 1989) (reasoning that "[t]he failure to afford a cause of action for bad faith to the beneficiary of a life insurance policy would negate a substantial reason for the insured's purchase of the policy – the peace of mind and security which it provides in the event of loss"). The general issue presented in this case is whether Plaintiffs [borrowers/property owners] may be deemed third-party beneficiaries of the Policy, which is a lender-placed insurance policy between GMAC [lender] and Meritplan [insurer]. Plaintiffs urge the Court to certify this question

4

to the Oklahoma Supreme Court.⁵ However, the Oklahoma Supreme Court has already provided sufficient guidance for this Court to predict how the Oklahoma Supreme Court would decide the question, and certification is not necessary.

The Oklahoma Supreme Court has outlined the following test for determining whether a party is a third-party beneficiary of a contract:

> "As a general proposition, the determining factor as to the right of a third party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts. Thus, it is often stated that the contract must have been intended for the benefit of the third person in order to entitle him to enforce it."

*G. A. Mosites Co. of Ft. Worth, Inc. v. Aetna Cas. & Sur. Co.*, 545 P.2d 746, 749 (Okla. 1976) (quoting 17 Am. Jur. 2d Contracts § 304); *accord Shebester*, 974 F.2d at 138; *Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981). A person "need not be a party to or named in the contract to occupy third-party beneficiary status." *Shebester*, 974 F.2d at 138.

In discerning the parties' intent, a court must consider "the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." *Id.*; *see also Shebester*, 974 F.2d at 138 ("The question is one of construction of the contract, determined by the terms of the contract."). Where the language of an insurance policy "is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect." *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006). An

---

⁵ Specifically, Plaintiffs seek to certify the question of "whether a borrower under a force placed insurance policy is a third party beneficiary and is entitled to assert claims for breach of contract and bad faith." (Pls.' Resp. to Defs.' Mot. to Dismiss 2.)

insurance policy "should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties." *Id.*

With these principles in mind, the Court turns to the Policy. The Policy is entitled a "Risk Based Protection Policy," and it consists of four parts: (1) Declarations Page; (2) Lender's General Form; (3) Residential Property Fire Insurance Form; and (4) Manufactured Home Fire Insurance Form. The Declarations Page states that the "insurance applies to direct physical loss or damage by the perils insured against to real property. No coverage is provided for contents, personal effects, additional living expense, fair rental value or liability." (Ex. 1 to Defs.' Mot. to Dismiss at 3.) It sets forth a maximum amount of insurance of $5,000,000.00 for residential property and $100,000.00 for manufactured homes. Relevant definitions include:

> YOU, YOUR, and YOURS mean the NAMED INSURED shown under Item 1 on the Declarations Page of the Policy . . ., which has an interest in the RESIDENTIAL PROPERTY described in the NOTICE OF INSURANCE as the direct result of a first mortgage, second mortgage, other lien instrument, or an agreement for the servicing of such contracts.
> . . .
> BORROWER means the person(s) or entity identified as the BORROWER on the NOTICE OF INSURANCE.
> . . .
> NOTICE OF INSURANCE refers to the form issued as notice of insurance purchased by YOU. A NOTICE OF INSURANCE form specifies the location, amount, and term of insurance for the individual RESIDENTIAL PROPERTY that has been insured by US at YOUR request.[6]
> . . .

(Ex. 1 to Defs.' Mot. to Dismiss at 7 (internal quotations omitted and footnotes added).)

---

[6] The Notice of Lender-Placed Insurance, which is attached as part of Exhibit 2 to Defendants' motion to dismiss, is the "NOTICE OF INSURANCE" referenced in this provision, and the Court deems it incorporated into the Policy by reference. The Notice of Lender-Placed Insurance identifies "Deborah Lumpkins" as the borrower and lists the same address identified in the Complaint as Plaintiffs' address. (*See* Ex. 2 to Defs.' Mot. to Dismiss 4.)

One relevant "condition" under the Policy is a requirement that the named insured provide notice of the loss, protect the property from further damage, and submit a sworn proof of loss setting forth, *inter alia*, its interest in the property. (*See id.* at 10 at Condition 4.) Another relevant condition, which is the most crucial in deciding the issue presented, is entitled "Loss Payment" ("Loss Payment Provision"):

> Loss Payment. We will adjust each Loss with YOU and will pay YOU. *If the amount of LOSS exceeds YOUR insurable interest, the BORROWER may be entitled, as a simple loss payee only, to receive payment for any residual amount due for the LOSS, not exceeding the lesser of the applicable Limit of Liability indicated on the NOTICE OF INSURANCE and the BORROWER's insurable interest in the damaged or destroyed property on the DATE OF LOSS.* Other than the potential right to receive such payment, the BORROWER has no rights under the Residential Property Form. Payment for LOSS will be made within thirty (30) days after WE reach agreement with YOU as to the amount of the LOSS . . .

(*Id.* at 11 at Condition 13 (emphasis added).) Also relevant is the following statement in the Notice of Insurance, which provides:

> The NAMED INSURED has purchased insurance on the DESCRIBED LOCATION for the amount and premium indicated above. The contract of insurance is only between the NAMED INSURED and [Meritplan]. There is no contract of insurance between the BORROWER and [Meritplan]. The insurance purchase is intended for the benefit and protection of the NAMED INSURED, insured against LOSS only to the dwelling and OTHER STRUCTURES on the DESCRIBED LOCATION, and may not sufficiently protect the BORROWER'S interest in the property. No coverage is provided for contents, personal effects, personal living expense, fair rental value or liability.

(Ex. 2 to Defs.' Mot. to Dismiss at 4.)

The Court finds the Policy to be unambiguous, rendering consideration of extraneous evidence improper. *See May*, 151 P.3d at 140.[7] Based on the Policy terms, the Court finds that the

---

[7] Plaintiffs submitted numerous exhibits outside the pleadings that are extrinsic to the Policy. (*See* Pls.' Resp. to Defs.' Mot. to Dismiss Exs. A-G.) Based on the above pronouncement in *May*, the Court declines to consider such evidence.

7

overarching purpose of the policy is to protect GMAC's interest in the Property. *See Simpson v. Balboa Ins. Co.*, No. 2:08CV281, 2009 WL 1291275, at * 3 (S.D. Miss. May 7, 2009) (describing similar policy as a "lender protection policy"and describing its purpose as "to protect the interest of a lender in a property upon which it holds a mortgage interest when there is no other hazard insurance on the covered property"). Further, GMAC is clearly the primary beneficiary of the Policy. GMAC, and not Plaintiffs, are obligated to provide notice and submit proofs of claim. GMAC, and not Plaintiffs, are entitled to have its claim adjusted. GMAC, and not Plaintiffs, receive any and all proceeds under the Policy. GMAC, and not Plaintiffs, is the party with which Meritplan reaches agreement as to the amount of loss prior to payment. The Policy, and the Notice of Lender-Placed Insurance incorporated therein, make clear that Plaintiffs are not parties to the agreement and have no coverage for any personal effects or contents of the Property.

Plaintiffs do, however, have one "right" under the Policy, which is contained in the Loss Payment Provision. It is a "potential right" to payment of proceeds in the event that the amount of loss exceeds GMAC's insurable interest in the Property. In this event, payment would come from GMAC from proceeds paid to it by Meritplan that exceed GMAC's insurable interest in the Property. Based on this potential right contained in the Loss Payment Provision, the more specific issue presented is whether a "potential" right of payment from GMAC is sufficient to render Plaintiffs third-party beneficiaries of the Policy.

The Oklahoma Supreme Court addressed analogous circumstances and held that the plaintiff was not a third-party beneficiary of an insurance policy. In *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006), the plaintiff was the owner of a condominium unit that incurred damages in a fire. The plaintiff sued for bad faith breach of an insurance policy, which was between the

condominium owners' association and the insurer. The loss payment provision in that policy gave the insurer the option of settling covered losses directly with the owners or with the association for the account of the owners. The plaintiff argued that she was a third-party beneficiary of such contract because (1) she paid a portion of the premiums, (2) the policy was intended to insure against damage to property owned solely by her; (3) the policy allowed the insurer to adjust her loss and pay policy benefits directly to her; and (4) the association held the policy as trustee for the benefit of all the unit owners. Notwithstanding this option to pay owners directly, the court reasoned:

> The contract's expressed intent to confer solely on Insurer the power to regard all contractual obligations due under the policy as extending to the named insured specifically negates the existence of any enforceable obligation in favor of unit owners qua third-party beneficiaries. No obligation may be imposed upon a promissor in favor of a third party if the contract expressly relieves that promissor of such liability to that third party. It is crystal-clear by the terms of the policy in suit that the parties to the policy – Insurer and Association – did not intent to confer any third-party unit owner a legally enforceable right of recovery against Insurer.
> . . .
> One to whom, by the express terms of a contract, no obligation is due from its promissor, cannot qualify for the status of an intended or implied third-party beneficiary. The express contractual negation of the promissor's duty to the third party status seeker operates to exclude that third party from legal recognition as third-party promisee.

*May*, 151 P.3d at 140-41.

Applying the reasoning in *May*, the Court concludes that Plaintiffs are not third-party beneficiaries of the Policy. Like the plaintiff in *May*, Plaintiffs are individuals "to whom, by the express terms of a contract, no obligation is due from [Meritplan]." *See id.* at 141. This is because the Policy does not obligate Meritplan to pay Plaintiffs insurance proceeds under any circumstances. All obligations to pay proceeds and to engage in good faith and fair dealing are owed directly to GMAC. Unlike the insurer in *May*, Meritplan does not even have the option to directly pay Plaintiffs. If an insurer's "option" to directly pay the plaintiff was insufficient to confer third-party beneficiary

9

status in *May*, the absence of any contractual option or obligation to directly pay Plaintiffs is fatal to Plaintiffs' argument. Although Plaintiffs have a "potential right" and "may" be entitled to ultimate receipt of proceeds paid to GMAC under the language of the Policy, Meritplan does not have any contractually conferred decision-making power as to whether GMAC makes such payment. Plaintiffs have not distinguished *May* or explained why *May*'s reasoning should not extend to the Policy, and the Court finds *May* controlling.

Courts that have directly addressed this issue have reached different outcomes. *Compare, e.g., Simpson*, 2009 WL 1291275, at \*\*1, 5 (addressing policy that "did not provide any coverage for loss of use, liability or personal property" but "did provide that the plaintiff could become an additional insured as to any policy benefits payable which exceeded the mortgage interest of [the lender] in the property") (holding that borrower/property owner failed to "provide any evidence of a legal obligation or duty to him" under the policy and that "any benefit to the plaintiff under this contract would be incidental, which is insufficient under Mississippi law to confer third-party beneficiary status"), *and Hume v. Evanston Ins. Co.*, No. 1:08cv189, 2008 WL 5233415, at \* 3 (S.D. Miss. Dec. 10, 2008) (same), *with Mingo v. Meritplan Ins. Co.*, No. 2:06CV1914, 2007 WL 4292026, at \* 2 (W.D. La. Dec. 4, 2007) (denying motion to dismiss in case involving lender protection policy and a similar loss payment provision to that presented here) (reasoning that it needed additional evidence regarding the amount of loss to determine the plaintiff's status under the contract). The Court declines to follow *Mingo* because it is contrary to the Oklahoma Supreme Court's reasoning

in *May* and the Court's obligation to determine third-party beneficiary status based on the four corners of an unambiguous policy.[8]

**IV.     Conclusion**

The Report (Doc. 23) is DENIED as moot, and this Opinion and Order serves as the Order of the Court. Defendants' Motion to Dismiss (Doc. 6) is GRANTED. The Court will enter a separate judgment of dismissal.

SO ORDERED this 22nd day of September, 2011.

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**

---

[8] Because Plaintiffs' claims against Meritplan fail to state a claim, their claims against Balboa premised on vicarious liability also fail to state a claim.